UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,                      Criminal No 17-20636

v.                                     Hon. Terrence G. Berg

Robert Gordon,

       Defendant.

_____/

**<u>Government's Sentencing Memorandum</u>**

      Robert Gordon is a predator. He's also a grown man. Yet, he used an online social media application called "Whisper" to target, manipulate, and travel to Michigan to take advantage of and have sex with 16-year old MV-1. He took MV-1 to various seedy hotel rooms in metro Detroit. He encouraged her to lie to her parents about her whereabouts. He had sex with her while she bled from her vagina, and recorded their sexual interactions for his own pleasure. Because of Robert Gordon, MV-1's family will never be the same. Because of Robert Gordon, MV-1 will never be the same. For those reasons, and the reasons stated below, the United States recommends a sentence of 300

1

months (25 years) imprisonment, a downward variance from the guidelines of life imprisonment. Such sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I. Facts and procedural history

### A. Facts

In 2016, Robert Gordon signed onto a social media platform called "Whisper" and posted a message seeking to connect with someone "who could help with his teenage daughter." That was a lie. He was actually looking for an underage girl so that he could manipulate her and begin a sexual—and illegal—relationship. Unfortunately for MV-1, she was the target of Gordon's scheme.

When MV-1 first met Gordon online, she was 15 years old. Over the next year or so, MV-1 and Gordon communicated on various social media platforms like Whisper, Skype and through text messages. Gordon lived in Indiana and MV-1 lived in Michigan.

Eventually, Gordon convinced MV-1 that it would be a good idea for him to travel from Indiana to Michigan so that the two could meet in person. They met, and Gordon began taking MV-1 to various motels in metro Detroit where they began a sexual relationship. Sometimes he recorded their interactions on his phone and iPad, probably so that he could watch the videos later for his own pleasure.

Gordon came to law enforcement's attention in August 2017, after MV-1's parents reported her missing. When MV-1 left her house on the night of August 26, 2017, she told her parents that she intended to spend the night at her girlfriend's house. Later that night, MV-1's parents received information that their daughter had met a man online named "Robert."  Specifically, a family member reported to the parents that MV-1 had posted information on her online social media account that she was with "Robert"—a white man in his 50s—at the Marvins Garden Inn.  MV-1's parents had never heard of "Robert."  They had never met him.  They did not know his identity.  All they knew was that this man had taken their child to a motel room.  MV-1's parents called the Southfield Police Department and headed to the motel.

Imagine the panic that MV-1's parents must have felt in that moment as they drove the motel. Who was this "Robert"? Was their daughter okay? Was she being harmed? Abused? Would her life ever be the same? Would their lives ever be the same?

Southfield Police Department officers met the parents in the parking lot. Unsurprisingly, MV-1's parents appeared anxious and worried. It was the middle of the night, approximately 3:30 in the morning, and their daughter was missing.

Officers located Gordon's vehicle in the parking lot of the motel. Then they identified the room that Gordon rented with MV-1, and obtained a room key for the room. Officers went to the room and when they encountered Gordon he was sitting on the bed in his underpants (about six feet from the door) pretending to be asleep. Officers found MV-1 hiding behind the bathroom door, hugging her teddy bear. MV-1 appeared scared. While they escorted MV-1 out, they noticed a photograph sticking out of MV-1's bag, showing her and Gordon naked, embracing. Later, officers interviewed MV-1 and she explained that she met Gordon online. She "giggled" and was too scared to answer any

4

questions about any sexual relations with Gordon. Officers confirmed that Gordon coaxed her into meeting him for sex at a motel at least two times before that night.

Law enforcement identified a number of electronic devices in the motel room. On the electronic devices, they saw the following:

- A video that Gordon recorded of MV-1 completely nude and performing oral sex on him;
- A video of MV-1 completely nude while Gordon penetrates her and she bleeds from her vagina;
- Another video of MV-1 performing oral sex on Gordon; and
- Another video of MV-1 and Gordon engaged in sexual intercourse.

### B. Procedural History

A grand jury charged Gordon in a 7-count indictment with:

| Count | Offense | Statute |
|---|---|---|
| 1-4 | Production of child pornography | 18 U.S.C. § 2251 |
| 5 | Coercion and enticement of a minor | 18 U.S.C. § 2422(b) |
| 6 | Interstate travel with intent to engage in a sexual act with a minor | 18 U.S.C. § 2423(b) |

| 7 | Possession of child pornography | 18 U.S.C. § 2252A(a)(5)(B) |

Gordon entered a guilty plea to counts 5 and 6; in exchange, the government agreed to dismiss counts 1-4 and 7. (R. 35: Rule 11 Plea Agreement).

This Court set sentencing for March 28, 2019 at 10:30am.

## II.  Sentencing Guideline calculations and relevant 3553(a) factors

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found

guilty of similar conduct; and (7) the need for restitution. The government will address some of the sentencing objectives below.

### A. Sentencing Guidelines

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The defendant's guideline range is life imprisonment, however, the government has agreed to not recommend a sentence of more than 25-30 years imprisonment under the terms of the Rule 11 Plea Agreement. Count five (coercion and enticement of a minor) carries a mandatory minimum term of imprisonment of 10 years. (R. 35: Rule 11 Plea Agreement).

## B. The nature and circumstances of the offense

Gordon targeted MV-1 on a social media platform under the guise of seeking help with his own daughter—a completely fabricated problem. When he met MV-1, he began the long process of coercing and enticing her to begin a "relationship" with him so that he could eventually convince her to have sex with him. Gordon did this despite knowing MV-1's age. He did this despite having a daughter of his own. It is shocking that someone like Gordon, who has a young daughter, could think that this sort of conduct is acceptable under any circumstance.

The online world is dangerous, but children should not have to live in fear that the people they meet on social media platforms will be predators that take advantage of them. Adults are presumably in the world to protect children. But when people like Gordon abuse their role as adults, target children online, and coerce and manipulate them into experiences beyond their years, any sense of protection that children should find in adults is diminished.

Congress has placed steep penalties on crimes against children—requiring mandatory minimum imprisonment for cases like this one—and for good reason. Children, unlike adults, are unable to consent to sexual activity because they simply cannot comprehend the consequences of their actions in the same way as an adult. It is because of their vulnerabilities that people like Gordon, a grown man, are able to manipulate and take advantage of girls like MV-1.

### C. The history and characteristics of the defendant

There is nothing novel about Gordon's history and characteristics, and he has a minimal criminal history. He has one conviction for obstruction of justice that he received when he was 20 years old. (PSR ¶88). Gordon comes from a divorced family, and has also been divorced twice, which allegedly contributes to his desire to seek out "love" from illicit places. However, many individuals who are divorced or come from divorced families do not engage in child exploitation offenses as a way to cope with the mental and emotion effects of divorce.

Gordon has three children—two of which he appears to have a good relationship with. According to the PSR, Gordon is in good

9

psychical health and does not suffer from any mental or emotional impairment. (PSR ¶104-107). Gordon is also a veteran of the United States Army. (PSR ¶115). The Court may consider recommending that Gordon be placed at a BOP facility close to his family so that his children and mother can visit him during his term of custody.

### D. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

Child pornography offenses are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics, surrounding child pornography, we are living in a country that is losing its soul.

> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012).

In passing 18 U.S.C. § 2251, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . .

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

Defendant's convictions involve harms to MV-1, which will have a lasting, indescribable, impact on the life of MV-1 and her family. A sentence of 300 months (25 years) reflects the seriousness of the offense, promotes respect for the law, and is just punishment for Robert Gordon.

### E. Adequate deterrence and protection of the public

By deterring both the individuals who create a demand for child pornography and those that produce the supply, courts can help prevent the sexual exploitation of children. Deterrence with respect to child pornography offenses is of particular import because of the high recidivism rates for these types of offenders. *See* Blaisdell, Krista, Note,

*Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val.U.L. Rev. 1155, 1192, n.150 (2009) (compiling congressional statements regarding the high risk of recidivism among child sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008); *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011) ("We need evidence-driven law just as we need evidence-driven medicine . . . statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children.") (citations omitted).

### F. Restitution and Crime Victims' Rights Act

At this time, MV-1 has not submitted a restitution request. The victim and her family may wish to invoke their right to be heard at the sentencing hearing. The Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, guarantees victims in criminal cases specific rights that are enforceable in federal court. One of the rights enumerated in the CVRA is "the right to be reasonably heard at any public proceeding in the

district court involving… sentencing" of a defendant. 18 U.S.C. § 3771(a)(4). MV-1 is a victim covered by the CVRA. The government requests that if MV-1 or her family wish to be heard at sentencing, the Court accommodate their request.

### III. Conclusion

The United States recommends a sentence of 300 months imprisonment.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

 /s Jihan M. Williams
JIHAN M. WILLIAMS
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9250
Jihan.williams@usdoj.gov

Date: March 21, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2019 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent a copy of the document via notification to:

- Michael Carter and Stacey Studnicki, counsel for defendant
- Chelsea Harris, Probation Officer

*/s Jihan M. Williams*
JIHAN M. WILLIAMS
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9250
Jihan.williams@usdoj.gov