UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

               Plaintiff,

                              HONORABLE TERRENCE G. BERG

     v.

                              No. 17-20636

ROBERT DONALD GORDON,

               Defendant.
_____/


SENTENCING HEARING

Detroit, Michigan -- Thursday, March 28, 2019


APPEARANCES:

| | |
|---|---|
| Jihan M. Williams, Esq. | Stacey M. Studnicki |
| U.S. Attorney's Office | Federal Defender Office |
| 211 W. Fort Street, #2001 | 613 Abbott, 5th Floor |
| Detroit, MI 48226 | Detroit, MI 48226 |
| Tel: (313) 226-9676 | Tel: (313) 967-5856 |
| jihan.williams@usdoj.gov | stacey_studnicki@fd.org |
| On behalf of Plaintiff | On behalf of Defendant |


-   -   -


To Obtain A Certified Transcript, Contact:
Nefertiti A. Matthews, Official Court Reporter
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan 48226
www.transcriptorders.com • jodi_matthews@mied.uscourts.gov

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

**Sentencing Hearing**
**Thursday, March 28, 2019**

I   N   D   E   X

-    -    -

Hearing:                                                    Page:  Vol.:

**Sentencing Hearing** .............................3     **1**

Allocution By Ms. Studnicki  ....................16     1

Statement By The Defendant  ....................19     1

Allocution By Ms. Williams  ....................19     1

**Sentencing By The Court** ......................27     **1**


Certification of Reporter ......................35

Exhibits:

None

17-20636; United States of America v. Robert Donald Gordon

1                           **Detroit, Michigan**

2                           **Thursday, March 28, 2019**

3                           **10:55 a.m.**

4                                   -   -   -

5           **THE CLERK:**  The Court now calls Case Number 17-20636;

6    United States of America versus Robert Donald Gordon.   Counsel,

7    please place your appearances on the record.

8           **MS. WILLIAMS:**  Good morning, Your Honor.  Jihan

9    Williams, appearing on behalf of the United States.

10          **THE COURT:**  Good morning.

11          **MS. STUDNICKI:**  Good morning, Your Honor.  Stacey

12   Studnicki, the Federal Defender's Office, on behalf of

13   Mr. Gordon, who is standing to my left.

14                           **Sentencing Hearing**

15          **THE COURT:**  Good morning, Ms. Studnicki.  Good

16   morning, Mr. Gordon.

17       Today is the date we have set for the sentencing in this

18   case and so let me just take a few moments to explain what is

19   going to happen.  So, Mr. Gordon, we're going to have a hearing

20   to decide what your sentence should be in this case.  As part

21   of that, we're going to go over the presentence report to make

22   sure you've had a chance to go over that with your attorney and

23   see if you have any objections to it or things in it that you

24   think are incorrect.  We'll also go over with you what your

25   Plea Agreement was and I'll indicate whether I'm going to

1    accept your Plea Agreement or not since we took it under

2    advisement at the time of your sentencing.

3         I'm also going to go over with you what the factors are

4    that The Court has to consider in deciding what the sentence

5    should be.  After that, I'm going to give your attorney a

6    chance to say anything that she would like to say on your

7    behalf and I'll also give you a chance to say anything you'd

8    like to say.

9         I'm also going to give Ms. Williams, on behalf of the

10   Government, the opportunity to address The Court.  After that,

11   I'll go through the different factors that apply and I'll

12   indicate what the sentence is going to be.  Do you think you

13   understand what's going to happen?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  All right.  Then why don't you come up to

16   the lecturn here with your attorney.  And let me ask you, did

17   you have a chance to go over the presentence report?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  And Ms. Studnicki, did you also go over

20   it?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  And did you, Mr. Gordon, see anything in

23   the presentence report that was incorrect or was a mistake of

24   any kind that you wanted to bring to The Court's attention?

25              THE DEFENDANT:  Not that I recall, Your Honor, no.

1          **THE COURT:**  All right.  What about you, Ms.

2     Studnicki?

3               **MS. STUDNICKI:**  No, Your Honor.

4          **THE COURT:**  And Ms. Williams, did you have a chance

5     to go over it as well?

6               **MS. WILLIAMS:**  Yes, Your Honor.

7          **THE COURT:**  And do you see anything in there that was

8     incorrect?

9               **MS. WILLIAMS:**  No, Your Honor.

10         **THE COURT:**  All right.  Well, thank you.

11        Now, I did go over the presentence report and I also went

12    over the Plea Agreement in the case as well and I have met with

13    the probation department about it.

14        I also wanted to indicate that I have received a

15    sentencing memorandum that was prepared by the Government in

16    this case that I went over very carefully and another

17    sentencing memorandum that was prepared by your attorney, Mr.

18    Gordon, I think it was prepared by both Ms. Studnicki and also

19    it has Mr. Carter's name on it.

20        I also read through the couple of letters attached to

21    that, there was one from your father and one from your mother

22    and I read through those very carefully as well.  So, those are

23    the things that I have before me here.

24        So, when I went through the presentence report and Plea

25    Agreement, I have some concerns about how the guidelines were

1    calculated here and let me explain what I mean by that.  As you

2    know, Mr. Gordon, you pled guilty to two counts, you pled

3    guilty to Count 5 and 6, that was for coercion and enticement

4    and interstate travel to engage in a sexual act with a minor.

5    And then you also had, in your Plea Agreement, had admitted to

6    certain relevant conduct that you agreed that you had

7    committed.  And in that, you had agreed to the conduct that

8    pertained to one production of child pornography on April 15th,

9    2017.  And then you also agreed to two different productions of

10   child pornography on August 26, 2017 and another one on August

11   26, 2017, and that was in the relevant conduct portion of your

12   Plea Agreement.

13       The Plea Agreement and the presentence report also

14   assessed four points in determining your base offense level for

15   the possession of what the guidelines refers to as sadistic and

16   masochistic conduct or depictions of violence.  So, with

17   respect to those four points, I did not see anything in the

18   presentence report that would justify the application of those

19   four points.  So, I want to have that addressed before we go

20   further because I want to make sure that the guideline

21   calculation is correct here.

22       So, where in this presentence report does it reference any

23   material that portrays sadistic or masochistic conduct or

24   depictions of violence.  Do we have that here?

25                    (Brief pause)

1        **MS. WILLIAMS:**  Sorry, Your Honor, I'm just looking

2   over the application notes.

3        **THE COURT:**  Right.  And if you can find it, I would

4   like to take a look at it, too, because when I took a look at

5   the application notes, I cannot find an application note that

6   gave a definition of that and so in using my own past

7   experience in these kinds of cases, I could see where there was

8   a reference to the kind of conduct that I would consider to be

9   sadomasochistic or violent or sadistic.  So, I'll give you a

10  chance to look for that.  But I am not inclined to assess those

11  four points in determining a base offense level.

12       The other thing that the presentence report did was it

13  included all of the counts of the indictment as part of what

14  they call, "Multiple Count Analysis," and the reason that it

15  included those was because in the Plea Agreement, as I said,

16  Mr. Gordon did admit in the relevant portion to some conduct in

17  the indictment.

18       The relevant conduct portion in the Plea Agreement,

19  however, only refers to one video on April 15th, 2017.  So,

20  that would not be two counts, that would only be one count and

21  so I'm not going to assess any unit for multiple count purposes

22  for one of those two counts, either Count 1 or Count 2.

23       The other concern that I have was that with respect to

24  Counts 3 and 4, the defendant did admit to the production of

25  child pornography on August 26th, 2017 because there was child

1    pornography that was found on the devices on that date when he

2    was arrested in this case.  But that evidence had been

3    suppressed by The Court and I don't believe that a jury would

4    have been able to see that evidence and I don't believe it's

5    appropriate for him to have an enhancement to his sentencing

6    for those two counts, even though he did admit to the conduct

7    where that evidence would not have been able to be admitted.

8    So, I don't think he should get those two extra units in the

9    multiple-count analysis in Counts 3 and 4.

10        The result of these changes to the calculation of the base

11   offense level would be essentially as follows:

12        The probation department came up with a total of 42 points

13   for the adjusted offense level and that was prior to adding any

14   points for the multiple count analysis and this is in Paragraph

15   81, 42 points.  But if you take away the four points for

16   sadomasochistic conduct, you'll come up with a 38 there.  And I

17   am not going to assess the four points because I don't see that

18   in the presentence report.  I don't see any references to that

19   kind of conduct in any of the images that are referenced.

20        I do want to allow the Government, and Ms. Williams, if

21   you wish to address it further, I'd be glad to hear from you

22   before I make a final decision on it.  But would you like to

23   address it?

24             **MS. WILLIAMS:**  Sure, Your Honor.

25        And I cannot find the application note at this time.  But

 1   my understanding of that enhancement was that it could be

 2   applied when there's penetration of a minor and, in this case,

 3   Mr. Gordon did admit to a production of child pornography count

 4   where there was penetration of a minor and where the minor was

 5   bleeding from her vagina at that time.  So, that's why the

 6   Government assessed the four points for the sadomasochistic

 7   conduct.

 8            **THE COURT:**  Yes, and I did read the portion about the

 9   bleeding that occurred and I wonder if that's what it was.  But

10   I just -- to me, given the -- although we do have someone who

11   was the subject of this kind of criminal activity when she was

12   age 15 and age 16 and that that is a minor, in the absence of

13   some application note or something that would give me clarity

14   with respect to this being sadomasochistic or violent behavior,

15   I would not want to assess those four points.

16       So, if we take those four points off -- and do you want to

17   be heard on this, Ms. Studnicki?  I don't mean to prevent you

18   from saying anything you'd like to say.

19            **MS. STUDNICKI:**  No, Your Honor.

20            **THE COURT:**  There's also the matter of the multiple

21   count analysis.  So, if we don't include one of the two counts

22   for production of child pornography on April 15th because the

23   Plea Agreement refers to only one image, one video, then that

24   would be one point less.  And then if we eliminate the two

25   convictions for child pornography possessed on August 26, 2017,

1   that would take three points off.

2        So, then you would have 38, and you'd add three units for

3   the three relevant conduct-related counts and you come up with

4   41.  And so 41, I think, is a correct guideline for the base

5   offense level here that we're dealing with.  And then he would

6   get three points off for acceptance of responsibility, both the

7   two points and one point and it come to three points.  So, the

8   guideline range that I think would be the correct guideline

9   range here would be between, if you have 38, it will be 235 to

10  293 months.

11       So, Mr. Gordon, I know this is a lot of, perhaps,

12  mumbo-jumbo to you, I don't know for sure that it is, but it

13  may be.  But the consequences of this are that I cannot accept

14  your Plea Agreement with that guideline calculation of life in

15  prison in it because I believe the correct calculation is 235

16  to 293.

17       So, because I cannot accept that Plea Agreement, I need to

18  give you the opportunity to withdraw your plea, if you want to

19  withdraw it.  You don't have to withdraw it.  You could go on

20  and be sentenced.  But if you are sentenced, it would not be

21  under a guideline range of life, it would be under a guideline

22  range of 235 to 293 because I think that's the correct

23  guideline range.  And I'm not going to accept the Plea

24  Agreement as written because I believe that guideline range is

25  not accurate and I have referred with the probation department

1   on this.

2        And Ms. Harris, I'd be happy -- if you wish to address The

3   Court, Ms. Harris, you may do so.  I know you prepared the

4   report and we had an opportunity to discuss this.  Is there

5   anything you'd like to say?

6              **PROBATION OFFICER:**  No, Your Honor.  Thank you.

7              **THE COURT:**  All right.  And so do you want to confer

8   with your attorney and decide if you want to go forward at this

9   time?

10             **THE DEFENDANT:**  Can I have just a moment, Your Honor?

11             **THE COURT:**  Of course.

12                        (A brief pause)

13         **MS. STUDNICKI:**  Your Honor, we're prepared to go

14   forward today.  Thank you.

15             **THE COURT:**  All right.  Thank you.

16        Ms. Williams, do you wish to be head?

17          **MS. WILLIAMS:**  Your Honor, just one moment.

18                        (Brief pause)

19          **MS. WILLIAMS:**  I have just conferred with my chief,

20   Matthew Roth, from the U.S. Attorney's Office and --

21             **THE COURT:**  Mr. Roth.

22          **MR. ROTH:**  Good morning, Judge.

23           **MS. WILLIAMS:**  I'm not sure if The Court would want

24   us to amend the Rule 11 Plea Agreement at this point to reflect

25   what The Court believes the guideline range to be, but I guess

1   if Mr. Gordon is prepared to go forward, that would be a

2   possibility or we could leave it as is.

3           **THE COURT:**  If you wish to amend the Plea Agreement

4   to reflect these guidelines, that's also an option you could

5   do.  So, whatever you'd prefer.  Ms. Studnicki, do you want to

6   do that or --

7           **MS. STUDNICKI:**  Well, Your Honor, we'd like to go

8   ahead and have the sentencing hearing today.

9           **THE COURT:**  Do you want to, for purposes of the

10  hearing, indicate that the provisions of the Plea Agreement are

11  acceptable to you with the exception of the guideline range or

12  do you prefer to just go with the guilty plea with no Plea

13  Agreement?

14          **MS. STUDNICKI:**  Well, I think we're prepared to

15  accept the calculations as calculated by The Court.  So, I

16  guess I would leave that up to The Court as to how The Court

17  would want to proceed, I'm not sure.  We need to change the

18  Plea Agreement.  Could I talk to Ms. Williams for a second?

19          **THE COURT:**  Sure, whatever you would like to do.

20                    (A brief pause)

21          **THE COURT:**  And I did want to say that I conferred

22  with Ms. Chubb, my case manager, and she said that we do have

23  time later today if we needed to come back.  If you wished to

24  prepare a new written Plea Agreement, you could do that; but if

25  you prefer to go forward, it's entirely up to you-all.

**Sentencing Hearing**
**Thursday/March 28, 2019**                                    13

1          **MS. WILLIAMS:**  I think, Your Honor, the parties are

2    prepared to go forward.  And I believe we just discussed and

3    the parties would like to amend the Rule 11 Plea Agreement to

4    reflect the guideline range as calculated by The Court.  And

5    that would also change the Government's sentencing

6    recommendation in this case.

7          **THE COURT:**  All right.  So, will you submit another

8    written Plea Agreement or what do you want The Court to do?  Do

9    you want me to just write in the changes to the Plea Agreement

10   that we have or . . .

11         **MS. WILLIAMS:**  If we could just write it in, I think

12   that would be easiest; but I'm happy to submit another Plea

13   Agreement, if The Court would like.  I do have a copy.

14         **THE COURT:**  All right.  Why don't you give me your

15   copy.  I think my copy might be on my -- oh wait, here it is --

16   is this it?  No, this is the unsigned version.  This is the

17   original that we had.

18         **MS. STUDNICKI:**  Would you rather we alter this one,

19   Your Honor?

20         **THE COURT:**  That would be fine, I guess.

21                        (A brief pause)

22         **THE COURT:**  So, you've submitted an original here

23   that contains the revisions.

24         **MS. STUDNICKI:**  Your Honor, we didn't change the

25   guideline worksheets, I don't know if The Court wants us to do

**Sentencing Hearing**
**Thursday/March 28, 2019**                                    14

1    that, too?  Just the body of the Plea Agreement.

2         **THE COURT:**  All right.  So, Mr. Gordon, I've been

3    handed a revised Plea Agreement here and I want to make sure,

4    bring to your attention that the parties have made some changes

5    here.  I think that you've initialed them as well; is that

6    right?

7         **THE DEFENDANT:**  Yes, Your Honor.

8         **THE COURT:**  And so on page 4 it says:  The

9    defendant's guideline range is between 235 and 293 months,

10   which is the guideline range that I just explained a moment

11   ago.  Do you agree with that?

12        **THE DEFENDANT:**  Yes, sir.

13        **THE COURT:**  And that guideline range is referenced

14   again on page 5.  And then on page 8, it indicates that the

15   Government makes a non-binding recommendation that it will not

16   seek an imprisonment in this case of more than the top of the

17   applicable guideline range which, in this case, would be the

18   293 months.

19       Now, it's been pointed out that the Plea Agreement did

20   contain worksheets, but those worksheets have a guideline

21   calculation that was different.  Is it the parties' agreement

22   that the guideline worksheets that are attached to this no

23   longer apply; is that correct?

24        **MS. WILLIAMS:**  Correct.

25        **MS. STUDNICKI:**  Yes, Your Honor.

1              **THE COURT:**  So, I'm just going to write "Void" on top

2     of this, okay, on top of the worksheets.  And then the

3     Agreement, itself, is what will govern regarding the guideline

4     range.  And other than that, the Plea Agreement is acceptable

5     to both parties.  So, do both parties wish me to accept the

6     Plea Agreement as has been amended in open court?

7              **MS. WILLIAMS:**  Yes, Your Honor.

8              **MS. STUDNICKI:**  Yes, Your Honor.

9              **THE COURT:**  All right.  Well, then in light of the

10    fact that I think this Plea Agreement is consistent with the

11    guideline range that I think applies here, I will accept the

12    Plea Agreement as amended and I'll go through, then,

13    Mr. Gordon, some of those factors I have to consider.

14         These guidelines, by the way, are not mandatory, they're

15    only advisory.  In other words, The Court has to take them into

16    account, I need to consider them, but it's not required that

17    you be sentenced within that guideline range under the law.  It

18    is required that The Court consider certain factors:

19         I have to consider the nature and circumstances of the

20    offense, what kind of crime it is.  I have to consider your

21    background and individual history and characteristics, if you

22    have any criminal history, for example, your family background,

23    your education, essentially everything about your background

24    that's in the presentence report.  I have to consider imposing

25    a sentence that promotes respect for the law, provides for a

1    just punishment, and also considers the seriousness of the

2    offense, and affords adequate deterrence, that means,

3    discouraging people from committing crimes.  I also need to

4    protect the public from further crimes and also provide you

5    with any kind of needed treatment you might need, such as, drug

6    treatment or mental health treatment or vocational training.

7         I do need to consider those sentencing guidelines that I

8    already mentioned.  I also have to consider the need to avoid

9    what we call, "Unwarranted Sentencing Disparities," that means,

10   treating people differently, even when their underlying crimes

11   and background are the same.  And those are the factors, all

12   the factors that I need to consider under federal law in

13   deciding what the sentence should be.

14        And so as I said, I did receive a memo from your attorney,

15   but I would be happy to hear from your attorney at this time.

16   **ALLOCUTION BY MS. STUDNICKI**

17        **MS. STUDNICKI:**  Your Honor, thank you.

18        Just briefly, I don't want to reiterate what I put in my

19   memo, but we're requesting a sentence of 10 to 13 years.  There

20   is a ten-year mandatory minimum, in this case, which would be

21   120 months.  And our recommendation of 10 to 13 would be 120 to

22   156 months.  Your Honor, that's based upon the fact that

23   Mr. Gordon has two minor children and he was the primary

24   caregiver for those two children who reside in Indiana at this

25   time with his mother.  Mr. Gordon is 47-years-old, and he was

 1    gainfully employed, Your Honor, and has a steady work history

 2    and has his entire life to support his family.  He is very

 3    sorry for this offense.  He's sorry to the victim for what

 4    occurred.  For any trama that she experienced.  He can't

 5    obviously go back in time, but he wishes that he could and undo

 6    what he did.

 7        However, Your Honor, I believe a sentence within the 10 to

 8    13-year range is more than adequate punishment for Mr. Gordon.

 9    It would remove him from society so that this could not occur

10    again.  But even in the absence of that, Your Honor, he has

11    learned a lesson and certainly would not repeat this behavior.

12    His family, Your Honor, is of the utmost importance to him and

13    is foremost in his mind.  He has not been able to see any of

14    them since he was arrested on this case and certainly would

15    like to see them again soon.

16        So, Your Honor -- we would also request that The Court

17    consider recommending Milan, he would like to stay close to

18    where his family could visit.  They live in Indiana, as I

19    mentioned before.

20        **THE COURT:**  Is there no facility that's closer to

21    Indiana?

22        **MS. STUDNICKI:**  There is one in Terre Haute, Indiana,

23    Your Honor, but we're unsure of the security level of that

24    facility and whether or not it would be a higher security level

25    than Mr. Gordon would have to be imprisoned at.  We would like

1   to avoid a USP, for instance, which would be a higher security

2   level, possibly.

3        Your Honor, I believe that's all I have to say at this

4   time.  His parents did write letters for him and are fully

5   supportive of him.  They did acknowledge in their letters that

6   he obviously made a grave mistake and this is more than a

7   mistake, but his parents still support him and hope to some day

8   again see him soon.

9        **THE COURT:**  In reading those letters I was struck

10  with the fact that it was not entirely clear that either of

11  Mr. Gordon's parents recognized the seriousness of his

12  potential exposure to sentencing.  Do you know whether they are

13  aware of that or have been advised of that?

14       **MS. STUDNICKI:**  Well, I'm not sure, Your Honor,

15  because we leave that up to the defendant to advise his family.

16  I'm not really certain.

17       **THE COURT:**  All right.  Well, I understand, so I

18  guess that's a decision.  But it seems that they were under a

19  misapprehension about how serious the case was, unfortunately,

20  so . . .

21       **MS. STUDNICKI:**  I believe they're elderly, Your

22  Honor, and there may be reasons why Mr. Gordon didn't want to

23  share the full impact with them.

24       **THE COURT:**  Okay.  All right.  Anything further?

25       **MS. STUDNICKI:**  Not from me, Your Honor.  Thank you.

1        THE COURT:  Thank you, Ms. Studnicki.

2     So, Mr. Gordon, I'd be happy to hear from you.  Anything

3  you'd like to say?

4  **STATEMENT BY THE DEFENDANT**

5        THE DEFENDANT:  Briefly, Your Honor.  First and

6  foremost, I want to thank you for being fair in these

7  proceedings.  I want to thank Ms. Williams for doing her job

8  and wish her God's speed in her future endeavors.  I'd also

9  like to thank Mr. Carter and Ms. Studnicki for their efforts on

10  my behalf.  And if I could, Your Honor, I would like to

11  apologize to the young lady and her family and tell them that I

12  am sorry for any harm or negative impacts that are a result of

13  my actions.

14        THE COURT:  Thank you very much, sir.

15     Okay.  Ms. Williams, on behalf of the Government.

16  **ALLOCUTION BY MS. WILLIAMS**

17        MS. WILLIAMS:  Yes, Your Honor.  Thank you.

18     On November 6th, 2016, when Minor Victim 1 met the

19  defendant, Robert Gordon, she was 15-years-old.  She responded

20  to a whisper message that Gordon posted seeking help with his

21  young daughter.  Little did she know that the defendant didn't

22  actually need help.  What he needed was someone to take

23  advantage of.  Someone that he could manipulate.  Someone that

24  he could eventually lure into starting a sexual, illegal

25  relationship with.

1       At 15-years-old Minor Victim 1 was at a stage in her life

2   that is extremely vulnerable for a young woman.  I'm sure that

3   everyone in this courtroom can remember their teenage years:

4   The insecurities that you have, the self discovery that you go

5   through, the pressure to fit in and also the pressure to look

6   forward and plan for the rest of your life.  You're focused on

7   things like the ACT, the SAT, college prep courses or college

8   applications.

9       At 15-years-old, Minor Victim 1 had to balance all of the

10  pressures of being a teenager, with the reality of being in a

11  position that no child should have to be in, being the victim

12  of a child exploitation offense.  Your Honor, there is

13  absolutely to no way to quantify, no way to explain, and quite

14  frankly, no way to imagine the impact that this defendant's

15  actions will have on Minor Victim 1 for the rest of her life.

16      Will she ever feel safe in a relationship again?  Can she

17  trust the adult males in her life?  Can she safely use the

18  internet?  How will her mental health and emotional health be

19  after the events that took place in November of 2016?  As The

20  Court is aware, children are children for a reason.  They are

21  not as emotionally developed or mature as adults.  They can't

22  make rational decisions like some adults can.  And as adults,

23  we're in a position to protect children.  But this defendant's

24  decision to prey on a child, part of society's most vulnerable

25  population, as a father himself, is unacceptable.  And no child

**Allocution By Ms. Williams**
**Thursday/March 28, 2019**                                        21

1    deserves to be put in the position that Minor Victim 1 was in.

2         Now, I know The Court is very familiar with the facts of

3    this case.  And we know that Minor Victim 1 was not the only

4    person who was impacted by Mr. Gordon's actions.  As The Court

5    can recall, Mr. Gordon came to law enforcement's attention

6    after Minor Victim 1's parents learned, through a social media

7    post, that their daughter was not where she was supposed to be.

8    And they had to live through the traumatizing moments of going

9    to a seedy motel in Southfield, wondering if their daughter was

10   alive, who the defendant was, and what they could do to help

11   their daughter.  Again, this is a situation that no parent

12   deserves to be in.  And it was all because this defendant

13   decided to go online as a predator and target Minor Victim 1.

14        Your Honor, in the Government's Sentencing memorandum we

15   recommend a sentence of 25 years of imprisonment and at the

16   sentencing today we're changing that recommendation to the top

17   of the guidelines which The Court calculated at 293 months.  On

18   behalf of the victim, on behalf of her family, Your Honor, we

19   believe that a sentence at the top of the guidelines is

20   appropriate, given this defendant's time, in this case, given

21   his history and characteristics and in comparison to other

22   defendants that are before The Court in the Eastern District of

23   Michigan.

24        Thank you, Your Honor.

25             THE COURT:  Thank you.  From the investigation that

 1   was done, and there was nothing like this in the presentence

 2   report, but was there any evidence that he was contacting other

 3   minors besides MV-1?

 4           **MS. WILLIAMS:**  There was, Your Honor.

 5           **THE COURT:**  Okay.  Well, I'm not necessarily going to

 6   be holding that against Mr. Gordon because that's not in the

 7   presentence report.  But I didn't want to, at the same time,

 8   give Mr. Gordon any kind of positive consideration for not

 9   being involved in possibly contacting other minors and so I

10   wanted to be clear on that point.

11       So, let me discuss the different factors that I have to

12   consider.  I do have to consider the nature and circumstances

13   of the offense.  As has been pointed out, the case came to the

14   attention of law enforcement when Mr. Gordon was discovered in

15   a Southfield hotel room with Minor Victim 1, she had only

16   turned 16 about ten days before the police arrived at that

17   location.  She had apparently posted something on social media

18   about her location in being with the defendant.  And her

19   cousin, I believe, who ended up alerting her parents to this

20   and the police end up entering the hotel room having gotten the

21   key from the front desk and they did find the defendant with

22   Minor Victim 1 at that time.  They also found evidence of child

23   pornography that had been recorded.

24       That, as I pointed out, that evidence was later suppressed

25   because of the lack of a warrant when the officers went into

 1    the room; but nevertheless, additional evidence was recovered

 2    at a later time in the form of Minor Victim 1's prior phone,

 3    cell phone, which had evidence of numerous communications

 4    between Mr. Gordon and Minor Victim 1.  And Minor Victim 1 was

 5    also interviewed and talked about the fact that Mr.  Gordon had

 6    traveled to Michigan both on that occasion in order to engage

 7    in criminal sexual conduct with her and also on other

 8    occasions.  And the presentence report goes into some detail

 9    about these things, that there were thousands of whisper chats

10    between Minor Victim 1 and Mr. Gordon.

11        And that during the timeframe of between November 16th of

12    2016 and the time when the arrest occurred in August of 2017,

13    that Mr. Gordon had traveled up here to Michigan in order to

14    meet with the victim and to engage in the criminal sexual

15    exploitive conduct with her.  And so the type of conduct that

16    we have here is extremely serious.  It does involve the

17    victimization of a minor, who might have been 16-years-old

18    which is the age of consent under Michigan Law in August 2017

19    when the arrest occurred.  But she was 15-years-old when the

20    other meetings that are referenced in the presentence report

21    occurred, that being in November 2016 and then later in

22    April 2016.  And defendant has admitted to making child

23    pornographic images of Minor Victim 1 that were manufactured as

24    a result of the encounters that he had with Minor Victim 1.

25        And so the conduct is extremely serious.  It's conduct

1   that involves a real person and somebody who is deeply affected

2   by this, as Ms. Williams points out, that her life have been

3   altered.  That her parent's lives have been altered in a very

4   negative way.  And so, I have to take all of that into account

5   and I do take all that into account.

6         In terms of Mr. Gordon's personal history and background.

7   I have reviewed the presentence report there and he had a

8   positive upbringing.  Although his parents were divorced when

9   he was young they, nevertheless, were supportive.  Both parents

10  were supportive of him.  He has been -- had two different

11  marriages, has three children.  Before the offense he was

12  actually raising his two children by his second wife who needed

13  him because his second wife was unable to provide any real

14  support for them.  And according to the presentence report,

15  Mr. Gordon was doing well with these children, raising them

16  effectively, and that's a positive thing.

17        Mr. Gordon also has a history of regular employment in

18  supporting his family.  Essentially, he's always been able to

19  maintain some kind of employment and that is positive.  The

20  record includes the fact that Mr. Gordon has a military service

21  record where he was in for a period of time in the U.S.

22  military and served overseas during the first Gulf War

23  timeframe between 1989 and 1995.  That is a positive element of

24  Mr. Gordon's background.

25        I do need to consider some of those other factors about

1   promoting respect for law and providing a just punishment.  It
2   is a very serious offense, as I have mentioned it.  It involves
3   the manipulation of a minor and that is very serious.  The
4   other factor I need to consider is deterrence, what they call
5   affording adequate deterrence, that means, discouraging people
6   from committing crimes.  The guideline range here and possible
7   penalty is extremely high and so any sentence, really, anywhere
8   approaching these guidelines would be a sufficient deterrent.
9   Mr. Gordon has never had any criminal history of significance
10  before.  There was a reference to, in 1992, an obstruction of
11  justice case that had had some child molestation charges that
12  were dismissed so that the only conviction was obstruction of
13  justice and that happened so long ago that none of that was
14  counted in terms of Mr. Gordon's criminal history, but it is
15  part of his criminal history.  But other than that, he has had
16  a clean record with no other convictions.

17      He's had some interactions with law enforcement in 1996
18  and 2005, one that resulted in acquittal and one that resulted
19  in a dismissal.  And so I don't give those -- I really can't
20  give those much weight, but it's part of your background
21  though.  Other than these things, you have not had a history of
22  violating the law.  And the offense here is limited to the
23  conduct that you had with the one victim.  Generally speaking,
24  you've led a productive and non-criminal and a law-abiding life
25  up until now.  But this is a very serious offense.

1    So, those are all of the different factors that The Court

2  has to consider.  The guideline range, as I mentioned here and

3  as the parties have agreed to is between 235 and 293 months,

4  that's between about 23 and a half to 25, a little bit under 25

5  years.  I think that that guideline range is greater than

6  necessary to accomplish the goals of sentencing and I'll try to

7  explain why.

8    As I've indicated, Mr. Gordon has not had a history of

9  criminal behavior here, other than this offense.  And the

10  offense involves terrible conduct regarding Minor Victim 1, but

11  is limited to the conduct of Minor Victim 1.  There's no

12  evidence of possession of other child pornography, for example,

13  as we often see in cases where individuals are engaging in

14  predatory conduct like this.

15    I do take into account the fact that Mr. Gordon had been

16  raising his family and supporting his family, whose children

17  who had no other real option than his care.  And I see that

18  also as something positive.

19    I do think a significant sentence is appropriate here

20  because of the nature of the conduct.  The conduct is very

21  serious and involves harm to a young woman who will be dealing

22  with this for the rest of her life and so the sentence needs to

23  take that into account and be a sentence that is a significant

24  period of time.

25    In considering all these factors, I believe that a

1    sentence that is below the guideline range here, but is a very

2    significant period of time, would be sufficient.  And so I'm

3    going to impose a sentence, in this case, of 17 years, which is

4    204 months.

5         I recognize that that represent a variance from the

6    guideline range.  But I also think that it is a significant and

7    lengthy sentence in light of the nature of the conduct

8    involving the victim.  So, that is the sentence I'm going to

9    impose.

10        If either party wishes to place any objections on the

11   record, they may do so at this time.  Any objections?

12             **MS. WILLIAMS:**  No, Your Honor.

13             **MS. STUDNICKI:**  No, Your Honor.

14                    **Sentencing By The Court**

15             **THE COURT:**  Pursuant to the Sentencing Reform Act of

16   1984, The Court, considering the Sentencing Guidelines and

17   factors contained in 18 U.S. Code Section 3553(a), hereby

18   commits the defendant to the custody of the U.S. Bureau of

19   Prisons for a term of 204 months on each count to run

20   concurrently.

21        Upon release from imprisonment, the defendant shall be

22   placed on supervised release for a term of eight years on each

23   count to run concurrently.

24        It is further ordered that defendant pay a special

25   assessment of $100 on each count, for a total of $200 which

1     will be due immediately.

2          It is further ordered that the defendant pay a Justice for

3     Victims Trafficking Act assessment of $5,000 on each count for

4     a total of $10,000, which will be due immediately.

5          The court waives the imposition of a fine, cost of

6     incarceration and cost of supervision due to defendant's lack

7     of financial resources.

8          It is further ordered the defendant pay restitution

9     payable to the Clerk of the Court for a disbursement to the

10    victim identified in this case in an amount that will be

11    determined at a later date.

12         The mandatory drug testing condition is suspended based on

13    The Court's determination the defendant poses a low risk of

14    future substance abuse.

15         Pursuant to 34 U.S. Code Section 40702, the defendant

16    shall cooperate with the collection of a DNA sample as directed

17    by the probation officer.

18         While on supervision, the defendant shall abide by the

19    standard conditions as adopted by the U.S. District Court for

20    the Eastern District of Michigan and shall comply with the

21    following special conditions:

22         Number One, the defendant shall comply with the

23    requirements of the Sex Offenders Registration & Notification

24    Act as directed by the Probation Officer, the U.S. Bureau of

25    Prisons, or any state offender registration agency in which he

1    resides, works as a student, or was convicted of a qualifying

2    offense.

3         Number Two, the defendant shall provide the Probation

4    officer with accurate information about all the computer

5    systems, hardware and software, all passwords and internet

6    service providers that the defendant has potential access to

7    and abide by all rules of the U.S. Probation Department's

8    Computer monitoring program.

9         The defendant shall only access a computer approved by the

10   probation officer.  The defendant shall consent to the

11   probation officer's conducting periodic, unannounced

12   examinations of all computer systems which may include computer

13   monitoring software at the defendant's offense.

14        For the purpose of accounting for all computers, hardware,

15   software and accessories, the defendant shall submit his

16   person, residence, computer and/or vehicle to a search

17   conducted by a U.S. probation officer at a reasonable time and

18   a reasonable manner.  The defendant shall inform any of the

19   residents that the premises and his computer may be subject to

20   a search pursuant to this condition.

21        The defendant shall provide the probation officer with

22   access to any requested financial information, including

23   billing records, telephone, cable, internet, satellite, et

24   cetera.

25        Number Three, the defendant shall not own or possess a

 1    camera, photographic device, or other equipment, including

 2    video recording equipment without prior approval of the

 3    probation officer.

 4         Number Four, the defendant shall not have contact directly

 5    or indirectly with any victim or witness in the instant

 6    offense, unless approved by the probation officer.

 7         Number Five, the defendant shall not associate with minor

 8    children under the age of 18 except in the presence of a

 9    responsible adult, who is aware of the nature of the

10    defendant's background and the current offense without prior

11    approval by the probation officer.

12         The defendant may have unsupervised contact with his

13    children at the discretion of the probation officer.

14         The defendant shall not frequent places where children

15    congregate on a regular basis, such as, but not limited to

16    school grounds, playgrounds, child toy stores, video arcades,

17    et cetera.

18         Number Six, the defendant shall notify anyone that he may

19    date or marry with a minor child under the age of 18 of this

20    conviction.

21         Number Seven, the defendant shall have employment

22    preapproved by the probation department.  The defendant shall

23    not be employed at or participate in any volunteer activities

24    that involve conduct with minors under the age of 18 or adults

25    with disabilities without prior approval of the probation

1    officer.

2         Number Eight, the defendant shall have all residences

3    preapproved by the probation department.  The defendant shall

4    not provide care or live in a residence where children under

5    the age of 18 or adults with disabilities also reside without

6    prior approval of the probation officer.

7         Number Nine, the defendant shall not purchase, sell, view

8    or possess images in any form of medium or live venue that

9    depict pornography, sexually explicit conduct, child erotica,

10   or child nudity.  The defendant shall not patronize any place

11   where such material or entertainment is available.

12        Number Ten, the defendant shall successfully complete any

13   sex offender diagnostic evaluations, treatment, or counseling

14   programs as directed by the probation officer.  Reports

15   pertaining to sex offender assessments and treatment shall be

16   provided to the probation officer.  Based on the defendant's

17   ability to pay, the defendant shall pay the cost of diagnostic

18   evaluations, treatment or counseling programs in an amount

19   determined by the probation officer.

20        Number 11, the defendant shall be required to submit to

21   periodic polygraph testing at the discretion of the probation

22   officer as a means to ensure compliance with the requirements

23   of supervision or treatment.  No violation proceeding shall

24   arise solely on the results of a polygraph examination.

25        Based on the defendant's ability to pay, the defendant

1    shall pay the cost of the polygraph examination in an amount

2    determined by the probation officer.

3         That is the sentence of The Court.

4         Now, Mr. Gordon, under the Plea Agreement that we were

5    just discussing previously, there is a section here called,

6    "Paragraph 9."  And under that section it basically says that

7    as long as whatever the sentence is is not greater than what

8    the Plea Agreement provides for, then you will be giving up

9    your right to appeal.

10        On this case, the sentence is lower than what the Plea

11   Agreement provides for and so it's likely that by this

12   Agreement you will be giving up your right to appeal the

13   conviction and the sentence.

14        Now, for some reason you believe that you do have the

15   right to appeal, then you need to do so within 14 days of the

16   date that the written judgment is issued.  Do you understand?

17              **THE DEFENDANT:**  Yes, Judge.

18              **THE COURT:**  All right.  Is there anything further

19   that we need to take up in this case?

20              **MS. WILLIAMS:**  Your Honor, at this time, the

21   Government moves to dismiss Counts 1 through 4 and 7 of the

22   indictment.

23              **THE COURT:**  Counts 1 through 4 and 7.  Are there

24   any -- is there any objection to dismissing Counts 1 through 4

25   and 7?

**Sentencing By The Court**
**Thursday/March 28, 2019**                    33

1          **MS. STUDNICKI:**  No, Your Honor.

2          **THE COURT:**  All right.  Counts 1 through 4 and 7 will

3    be dismissed.

4        Now, I noticed that there was a provision for possible

5    restitution.  What is the Government going to do on that?

6          **MS. WILLIAMS:**  Your Honor, at this time, Minor Victim

7    1 has not submitted a restitution request.  I'm willing to

8    speak with her family after the sentencing today.  And if they

9    do submit a restitution request, we'll work with the defense

10   counsel to get that to The Court as soon as possible.

11         **THE COURT:**  All right.  Well, we do need to get that

12   soon because we want finality with respect to what the judgment

13   is going to be, all right.

14         **MS. WILLIAMS:**  Yes, Your Honor.

15         **THE COURT:**  So, let's get that in as soon as possible

16   if there is any restitution request.  Is that going to be

17   subject to a stipulation of the parties then or what?

18         **MS. WILLIAMS:**  We would hope so, Your Honor.

19         **THE COURT:**  Well, do you anticipate that, Ms.

20   Studnicki, or?

21         **MS. STUDNICKI:**  Well, I think we'll have to see what

22   it is, Your Honor.  I can't commit to anything right now, but

23   certainly we'll try to work with the Government on that.

24         **THE COURT:**  All right.  Other than that, is there

25   anything else we need to take up?

**Sentencing By The Court**
**Thursday/March 28, 2019**                                    34

1          **MS. WILLIAMS:**  No, Your Honor.  Thank you.

2          **MS. STUDNICKI:**  No, Your Honor.  Thank you.

3          **THE COURT:**  All right.  Thank you all very much.

4     Good luck to you, Mr. Gordon.

5          And let me say one more thing, I do want to recommend

6     Milan as the location for the sentence to be served.  That was

7     part of the request and I want to make sure that was part of

8     the judgment.  That is not something that we could guarantee,

9     that's up to the U.S. Bureau of Prisons to make that

10    determination.  But I do recommend, at the request of the

11    defendant, that Mr. Gordon be placed in FCI-Milan.

12         **MS. STUDNICKI:**  Thank you, Your Honor.

13         **(Whereupon proceedings concluded at 11:54 a.m.)**

14                        -    -    -

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2
 3                         -   -   -
 4               C E R T I F I C A T I O N
 5          I, Nefertiti A. Matthews, official court reporter
 6     for the United States District Court, Eastern District of
 7     Michigan, Southern Division, appointed pursuant to the
 8     provisions of Title 28, United States Code, Section 753,
 9     do hereby certify that the foregoing is a correct
10     transcript of the proceedings in the above-entitled cause
11     on the date hereinbefore set forth.
12               I do further certify that the foregoing
13     transcript has been prepared by me or under my direction.
14
15     Date: April 21, 2020
16
17     s:/Nefertiti A. Matthews
       Nefertiti A. Matthews,
18     Official Court Reporter
19                         -   -   -
20
21
22
23
24
25
```