UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | 2:17-CR-20636-TGB |
| Plaintiff, | |
| vs. | **ORDER DENYING PETITIONER'S MOTION TO VACATE HIS SENTENCE UNDER 28 U.S.C. § 2255** |
| **ROBERT DONALD GORDON**, | |
| Defendant. | |

Petitioner Robert Donald Gordon was convicted in federal court after entering into a Rule 11 Plea Agreement allowing him to plead guilty to coercion and enticement of a minor and interstate travel with intent to engage in a sexual act with a minor. *See* ECF No. 35. He was sentenced to 204 months imprisonment. ECF No. 47, PageID.605. In accepting a Rule 11 Plea Agreement, Petitioner waived his right to make a direct appeal. Now Petitioner seeks to vacate his sentence under 28 U.S.C. § 2255. ECF No. 42. In his motion, Petitioner advances five claims, two of which constitute ineffective assistance of counsel claims: (1) his defense counsel was ineffective for failing to argue that the contents of MV-1's

1

first cell phone should have been suppressed, (2) the police officers' investigation violated his Fifth Amendment right to due process of the law, (3) the statutes under which Petitioner was convicted are unconstitutional, (4) this Court lacked subject-matter jurisdiction and territorial jurisdiction to impose a sentence on him, and (5) his defense counsel was ineffective for failing to adequately explain the consequences of the Rule 11 Plea Agreement. For reasons explained below, the Court **DENIES** Petitioner's motion in its entirety. *See id*.

## I.    Background

In the early hours of August 27, 2017, parents of sixteen year old "MV-1" called 911 to inform law enforcement that they received information that their daughter was at Marvin's Garden Inn[1] in Southfield, Michigan with a 45-to-50 year old man from Indiana named "Robert." ECF No. 14, PageID.32. MV-1 had told her parents that she would be spending the night at a friend's house, but through a social media post, MV-1's parents learned that their daughter was at a motel with an older man that they did not know.

Soon thereafter, MV-1's parents met with police officers in the parking lot of the motel. ECF No. 14, PageID.41; ECF No. 17, PageID.62-

---

[1] According to law enforcement, Marvin's Garden Inn is a motel "well-known to the officers for sex trafficking, drugs, and violence." ECF No. 17, PageID.62.

64. There, officers noticed a vehicle with Indiana license plates in the parking lot. After running the license plate in their database, the officers learned that the vehicle belonged to the Petitioner, Robert Donald Gordon. The officers confirmed with the motel clerk that Petitioner was renting a room there, found it, and loudly knocked at the door for several minutes. Without hearing a sound from the inside after several minutes of knocking with steel batons, the officers obtained a key and entered the room.

Once in the room, the officers encountered Petitioner sitting on the bed. Petitioner told them that MV-1 was in the bathroom. ECF No. 14, PageID.42. The officers did not arrest Petitioner then but did provide him with *Miranda* warnings. ECF No. 17, PageID.65. Petitioner told the officers that he wanted to cooperate and gave them permission to search the room and his belongings. *Id*. Officers searched the room and seized several of Petitioner's personal electronics and a cell phone that belonged to MV-1 ("MV-1's second cell phone"). ECF No. 14, PageID.42.

The next day, MV-1's father contacted the officers and informed them that he found an old cell phone that belonged to MV-1 when she was fifteen years old ("MV-1's first cell phone"). ECF No. 14, PageID.42. MV-1's father explained that this cell phone contained explicit conversations between then-fifteen-year-old MV-1 and Petitioner. The

officers took this device and its passcode from MV-1's father, and the following day obtained a search warrant to examine its contents. *Id*.

Two days later and after the officers obtained a valid warrant for his arrest, Petitioner was arrested at his workplace in Indiana for alleged violations of production of child pornography, possession of child pornography, coercion and enticement of a minor, and interstate travel with the intent to engage in a sexual act with a minor. *See* ECF No. 14, PageID.37. While under arrest, Petitioner was advised of his *Miranda* rights, signed a waiver of those rights, and signed a form giving police consent to search his home and vehicle. Petitioner also admitted to traveling from Indiana to engage in a sexual relationship with MV-1. He further explained how he met MV-1, their relationship, and his plan to visit MV-1 in Michigan. MV-1 also spoke with her father and the officers and confirmed that Petitioner traveled on several occasions from Indiana to Michigan to engage in sexual acts with her when she was fifteen years old and that Petitioner knew she was less than eighteen years old. ECF No. 35, PageID.441.

After criminal proceedings initiated against him, Petitioner filed his first motion to suppress, challenging the officers' entry and subsequent search of his motel room and personal electronic devices as a violation of his Fourth Amendment rights. *See* ECF No. 14. The Court granted that motion to suppress, finding that the officers' warrantless

entry into Petitioner's motel room violated his Fourth Amendment rights and that the taint of unlawful entry had not dissipated when he allegedly consented to the search of his hotel room. As a result, the Court held that all evidence obtained as a result of the officers' illegal search was to be excluded. *See* ECF No. 20.

Shortly after, Petitioner filed a second motion to suppress challenging the evidence that the officers obtained in the days following the motel room search. *See* ECF No. 25. This included MV-1's first cell phone, as well as additional evidence seized during a subsequent search of Petitioner's home and vehicle. *Id*. As to the second motion to suppress, the Court reaffirmed that the unlawful entry had not dissipated when officers seized MV-1's second cell phone at the hotel and therefore any evidence found on it were subject to exclusion. ECF No. 33, PageID.430-31. Further, the Court found that MV-1's first cell phone, the one that her father had handed over to the officers the day after the incident at the motel, was discovered from a source independent of the illegality, that the officers developed adequate probable cause from that independent source to arrest Petitioner, and that Petitioner's consent to search his home and vehicle was validly given. Accordingly, the Court held that MV-1's first cell phone and any evidence found on it, as well as any evidence seized at Petitioner's residence and in his vehicle, were admissible. *Id*. at 431.

As his criminal proceedings progressed, Petitioner and the prosecution entered into a Rule 11 Plea Agreement. *See* ECF No. 35. This agreement allowed Petitioner to plead guilty to coercion and enticement of a minor and interstate travel with intent to engage in a sexual act with a minor. *See id*. The guideline range calculated a range of ten years to life imprisonment. *See id*.

At the plea hearing, the Court went over the Rule 11 Plea Agreement with Petitioner. The Court found that Petitioner was of sound mind and that he understood its terms. ECF No. 46, PageID.560-64. Petitioner also agreed with the statements outlined in the Rule 11 Plea Agreement under "Factual Basis" which outlined his offense conduct and are consistent with the statements here. *Id*. at PageID.574.

The Court then convened a sentencing hearing. Although the parties agreed to a guideline range with a minimum of 300 months, the Court found that the appropriate guideline range was from 235 to 293 months. ECF No. 47, PageID.588. The parties amended the Rule 11 Plea Agreement and the prosecution decreased its sentencing recommendation. The Court then sentenced Petitioner below the guidelines to 204 months imprisonment. *Id*. at PageID.605.

## II.    Standard of Review

### a. Procedural default rules.

Procedural default rules state that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). While neither a statutory nor a constitutional requirement, this rule aims to promote the conservation of judicial resources and to "respect the law's important interest in the finality of judgments." *Id.* at 504. However, the Supreme Court has established that an ineffective assistance of counsel claim "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id. Massaro* opined that applying the procedural default rule to ineffective assistance claims would create the risk that "defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Creating such an incentive for defendants would defeat the procedural default rule's purpose of achieving efficiency and finality. In addition, the Supreme Court reasoned that district courts are better suited for assessing the adequacy of representation during an entire trial. *Id.* at 505.

**b. Ineffective assistance of counsel.**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Prejudice arises when counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. A petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "A court need not determine whether counsel's performance was deficient, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Crawley v. Curtis*, 151 F. Supp. 2d 878, 883 (E.D. Mich. 2001) (citing *Strickland*, 466 U.S. at 697).

## III.   Discussion

Petitioner asserts five claims, two of which constitute ineffective assistance of counsel claims: (1) his defense counsel was ineffective for failing to argue that the contents of MV-1's first cell phone should have been suppressed, (2) the police officers' investigation violated his Fifth Amendment right to due process of the law, (3) the statutes under which Petitioner was convicted are unconstitutional, (4) this Court lacked subject-matter jurisdiction and territorial jurisdiction to impose a

sentence on him, and (5) his defense counsel was ineffective for failing to adequately explain the consequences of the Rule 11 Plea Agreement.

### a. Claims two, three, and four are dismissed as procedurally defaulted.

The government argues that Petitioner's motion should be denied because he has not filed a direct appeal and therefore his claims are procedurally defaulted. ECF No. 48, PageID.622. The Court notes that under Petitioner's Rule 11 Plea Agreement, he has waived the right to direct appeal. ECF No. 42, PageID.516. Putting that fact aside, the government relies on several Supreme Court cases in support of the position that a "defendant cannot use § 2255 to circumvent direct appeal" and therefore "claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review." ECF No. 48, PageID.622 (citing *Johnson v. Lee*, 136 S. Ct. 1802, 1805 (2016); *Massaro*, 538 U.S. at 504; *Bousley v. United States*, 523 U.S. 614, 622 (1998)). While a petitioner may overcome this bar by showing either good cause excusing his procedural default and actual prejudice resulting from the error of which he complains, or actual innocence, the government denies that Petitioner has done so here. ECF No. 48, PagID.621.

The Court disagrees with the government's view to the extent that the procedural default rules bar all of Petitioner's claims. It is true that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro*, 538 U.S. at

504 (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). However, *Massaro* carved out an exception for petitioners who bring ineffective assistance of counsel claims. *Id*. The Supreme Court was clear that the district court is better suited to assess such claims in the first instance because of its familiarity with the facts and the performance of counsel. *See id*. Indeed, *Massaro* stands for the proposition that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id*.

When a defendant waives his right to direct appeal, a motion under § 2255 cannot "do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947); *see also Johnson v. United States*, 838 F.2d 201, 202 (7th Cir. 1988) (reemphasizing that "forgoing an appeal bars collateral review of appealable issues."). In *Kaufman v. United States*, the Supreme Court contemplated the denial of § 2255 relief to a federal prisoner who waived his right to a direct appeal. 394 U.S. 217 (1969). *Kaufman* ruled that a district court sitting in § 2255 review "may in a proper case deny relief to a federal prisoner who has deliberately bypassed the orderly federal procedures provided by way of appeal." *Id*. at 227 n.8. Likewise, in *United States v. Linder*, the Fourth Circuit considered whether a petitioner who has knowingly and voluntarily waived his right to a direct appeal may raise his claims on collateral review. 552 F.3d 391 (4th Cir. 2009). *Linder*

concluded no, reasoning that while a petitioner who has waived his right to appeal is able to file a petition for collateral review, he is precluded from raising claims that could have been raised on direct appeal. *Id*. at 396-97 (citing Brian R. Means, *Federal Habeas Practitioner Guide*, Jurisdiction § 1.23.0 (2006/2007)).

Having arrived at the appropriate framework, the Court must now determine which of Petitioner's claims are not ineffective assistance of counsel claims and are therefore procedurally defaulted, and which are ineffective assistance of counsel claims that may be reviewed under § 2255.[2] The Court holds that claims two, three, and four must be dismissed for being procedurally defaulted as they are not ineffective assistance of counsel claims. Claims one and five however properly plead as ineffective assistance of counsel claims and they will be reviewed under § 2255. *See Massaro*, 538 U.S. at 504.

Claim two asserts that the officers violated Petitioner's due process rights. ECF No. 42, PageID.533. Petitioner claims that the officers did not have probable cause to initiate an investigation against him because under Michigan law, the minimum age of consent is sixteen years old. *Id*. at PageID.534. Moreover, because the officers referred the matter to federal prosecutors rather than state prosecutors, they exceeded their

---

[2] Under the Rule 11 Plea Agreement, Petitioner waived his right to direct appeal and therefore all of his non-ineffective-assistance of-counsel claims are procedurally defaulted.

discretion and placed Petitioner under greater exposure to criminal sanctions. *Id*. The Court finds that this argument has no bearing on the effectiveness of Petitioner's counsel and is therefore procedurally defaulted. *See Massaro*, 538 U.S. at 504. Moreover, even if Petitioner had characterized this as an ineffective assistance of counsel claim, it would necessarily fail because it is not ineffective to fail to raise a frivolous claim: there was clearly sufficient factual predicate for a violation of federal law and there was no violation to refer the case for federal investigation.  Claim two is dismissed.

Next, claim three asserts that certain federal statutes are unconstitutional. ECF No. 42, PageID.537. Specifically, Petitioner maintains that federal statutes defining the term "minor" and prohibiting the online enticement and coercion of a minor are outside the scope of the federal government's enumerated powers under Article I, Section 8 of the United States Constitution, as well as the 1st, 9th and 10th Amendments. ECF No. 42, PageID.538. Because such federal statutes are unconstitutional, Petitioner argues that he has been wrongfully convicted and is entitled to the appropriate relief. *Id*. at PageID.539. This argument likewise has nothing to do with an ineffective assistance of counsel claim. *See Massaro*, 538 U.S. at 504. Similarly to Claim Two however,  even if Petitioner had characterized this as an ineffective assistance of counsel claim, it would necessarily fail because

it is not ineffective for counsel to choose not to raise a frivolous claim. The federal statutes defining the offenses of Petitioner's conviction represent lawful exercises of Congress' power to regulate interstate commerce. Claim three must be dismissed.

Finally, claim four contends that the Court lacks subject-matter and territorial jurisdictions and therefore Petitioner must be released. ECF No. 42, PageID.544. Under Petitioner's reading of Article I, Section 8, clause 3 of the United States Constitution, Congress' enactment of certain felonies under the interstate commerce is unconstitutional. ECF No. 42, PageID.540-41. Consequently, Petitioner argues, the Court was prohibited from imposing sentences on Petitioner for violating such unconstitutional laws. *Id* at. PageID.544. Further, relying on *Bousley v. United States*, Petitioner asserts that "without jurisdiction, a defendant is actually and factually innocent of committing a crime against the laws of the United States." *Id.* (citing *Bousley*, 523 U.S. at 623-24). As with Claims Two and Three, Claim Four fails to articulate any failure by Petitioner's counsel to provide effective assistance, and as stated above, it was not ineffective for counsel to omit this unsupportable claim. It must therefore be dismissed. *See Massaro*, 538 U.S. at 504.

> **b. Claims one and five state claims for ineffective assistance of counsel warranting § 2255 review but are without merit.**

Claims One and Five properly assert allegations of ineffective assistance of counsel and shall be reviewed under § 2255. Nevertheless, as the Court will explain below, the grounds in support of these claims are without merit.

> **i. Claim one fails for lack of a meritorious Fourth Amendment argument.**

As to claim one, Petitioner argues that he received ineffective assistance because his counsel failed to make three possible arguments in moving to suppress the evidence found in MV-1's first cell phone. ECF No. 42, PageID.527. But all three arguments fail to show that his Fourth Amendment claim would have been meritorious. *See* ECF No. 42, PageID.530.

The thrust of Petitioner's first argument is that his counsel should have argued that this Court's order granting the first motion to suppress the contents of MV-1's *second* cell phone should have also included the contents on mobile applications similarly accessible from MV-1's first cell phone. *Id.* at PageID.530. For his second argument, Petitioner's counsel should have argued that because the government lacked a "valid search warrant, subpoena, or consent to access the remote server" that housed the content accessible from both of MV-1's cell phones, that evidence

should have been excluded. *Id.* at PageID.530. Third, Petitioner argues that MV-1's father could not have given valid consent to have officers search her first cell phone. According to Petitioner, because his counsel did not make these arguments, the content accessible from MV-1's first cell phone was used as evidence to convict him.

In the Sixth Circuit, to assert an ineffective assistance of counsel claim based on a defense counsel's failure to raise a Fourth Amendment claim competently, a petitioner must make two showings. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)). Petitioner must prove (1) that his Fourth Amendment claim is meritorious and (2) that there was actual prejudice by showing "that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Ray*, 721 F.3d at 762.

As to the first argument, Petitioner asserts that this Court's order granting the first motion to suppress should have also excluded the contents accessible from MV-1's first cell phone. *Id.* But Petitioner cites to no case law supporting the proposition that an order granting a motion to suppress the contents of one cell phone includes content on a mobile application that is similarly accessible on a different cell phone. Moreover, this Court considered at length the admissibility of the contents of MV-1's first cell phone in its order granting in part and

denying in part Petitioner's second motion to suppress. ECF No. 33, PageID.408. In that order, the Court found that while MV-1's first cell phone was derivative of the police's illegal search of the motel room, the phone was obtained from a source independent of the illegality. *Id*. at PageID.412 (citing *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)). The contents of MV-1's first cellphone was consequently not subject to the exclusionary rule. Petitioner also makes no allegations that this Court's conclusion under the independent source analysis was wrongly decided such that his Fourth Amendment claim would have been meritorious. This argument therefore fails. *See Ray*, 721 F.3d at 762.

Next, Petitioner asserts that his defense counsel should have argued that the officers needed a search warrant to access the remote server that housed the contents found in MV-1's first cell phone. ECF No. 42, PageID.530. Petitioner cites the Supreme Court's decision in *Thomas v. California* to argue that officers need a search warrant separate from the valid search warrant authorizing them to access the contents housed in the cell phone itself if they are seeking to access content that is housed in a remote server. 571 U.S. 1160, 134 S.Ct. 997, 187 L.Ed. 2d 845 (2014). But that is not what *Thomas v. California* holds. Rather, an inquiry into Petitioner's provided citation leads to a relatively brief order denying a petitioner's request for a rehearing. Nor does a thorough inquiry into the relevant authorities yield any supporting case law for Petitioner's

proposition that law enforcement must have a separate search warrant for content found on a cell phone that may originate in a remote server rather than accessing that information through the authorization of a warrant for the cell phone itself.

Petitioner's argument assumes that, in searching MV-1's first cell phone, officers must have connected to remote servers and downloaded information not otherwise resident on the phone as part of the search. The record does not support this assumption. Rather, it shows that the search was limited to the stored information in the cell phone itself. But even if searching officers had connected to any of MV-1's online accounts through her cell phone to view data that the phone automatically displays, Petitioner offers no authority for his position that a separate warrant would have been required.

Furthermore, even if Petitioner's view of the law were correct, he fails to show that the evidence used to convict him from MV-1's first cell phone was in fact housed in a location independent from the cell phone. This argument thus lacks a meritorious Fourth Amendment claim and is therefore dismissed.

Finally, Petitioner argues that MV-1's father could not provide valid consent for the officers to search MV-1's first cell phone because MV-1's father did not have authority over the device. *See Moran v. United States*, 944 F.3d 1 (1st Cir. 2019). But the Court need not address the

applicability of *Moran* because here, the record shows that the officers searched MV-1's first cell phone only after obtaining a valid search warrant.[3] ECF No. 28-2, PageID.310. MV-1's father merely supplied MV-1's first cell phone to the authorities. *Id.* The search warrant obtained for MV-1's first cell phone authorized the officers to search the cell phone and its various contents, which included "images files, video files…internet history, *and any and all other data contained therein.*" *Id.* at PageID.311. As such, even if MV-1's father arguably did not have the authority to give consent to the search MV-1's first cell phone, Petitioner's Fourth Amendment rights were not violated because the police officers had a valid search warrant granting them lawful authority to do so.[4] Again, because Petitioner cites to no case law supporting his arguments, he has failed to show that his Fourth Amendment claims would have been meritorious. Claim one must be dismissed in its entirety. *See Ray*, 721 F.3d at 762.

---

[3] Even so, *Moran* is not controlling law in this jurisdiction.

[4] In addition, under *Rakas v. Illinois*, Petitioner lacks standing to challenge the search of MV-1's first cell phone because he lacked a property interest in it. 439 U.S. 128, 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). The Fourth Amendment standing requirement under *Rakas* is another reason that Petitioner's claims relating to the contents found in MV-1's first cell phone must fail.

### ii. Claim five fails because defense counsel adequately informed Petitioner of the consequences of the plea agreement.

Finally, as to claim five, Petitioner argues that he received ineffective assistance of counsel while negotiating his Rule 11 Agreement. ECF No. 42, PageID.546. Specifically, Petitioner claims that due to defense counsel's ineffective assistance: (1) he was left with two equally unattractive options that effectively caused him to be coerced and (2) he had insufficient information at the time he signed the Rule 11 Agreement and did not adequately understand its terms. *Id.* at PageID.545.

It is well-established that the test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The Supreme Court in *Hill* further clarified this rule by stating that the test for voluntariness of a plea "depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Furthermore, the purpose of district courts conducting a Rule 11(f) inquiry is "'to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense.'" *United States v. Tunning*,

69 F.3d 107 (6th Cir. 1995) (citing Fed. R. Crim. P. 11(f)). Declarations in open court under oath concerning the performance of defense counsel "carry a strong presumption of veracity." *Johnson v. O'Dea*, 1993 WL 51933 at *4 (6th Cir. 1993); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Here, Petitioner's own pleading reveals that his defense counsel did not leave him uninformed and unaware of the consequences of the Rule 11 Plea Agreement. *See* ECF No. 42, PageID.455. Petitioner admits as much when he states that "[c]ounsel advised the movant that one option was to take the case to trial and that the verdict would likely go against the movant." *Id*. at PageID.455. Petitioner also admits that his defense counsel explained to him the different outcomes that would result if his case went to trial or if he accepted a plea agreement. *Id*. at PageID.455-56. Further, defense counsel even explained to him the possible tactics the prosecution would pursue against him in a trial. *Id*. For example, Petitioner states that he was aware at the time that if the case were to go to trial, the prosecutor would call MV-1 to the witness stand and MV-1's testimony "would get the excluded evidence admitted into trial." *Id*. These are not the statements of a defendant whose defense counsel failed

to adequately inform him of the possible consequences of pleading guilty versus going to trial. Rather, the record shows that defense counsel's advice to Petitioner fell "'within the range of competence demanded of attorneys in criminal cases.'" *See Hill*, 400 U.S. at 56.

A further review of Petitioner's plea hearing on November 18, 2018 reveals that he was not coerced or uninformed about the terms under the Rule 11 Plea Agreement. ECF No. 46, PageID.560. Petitioner said as much in response to the Court's questioning, that he was not coerced, forced, or threatened to plead guilty. *Id.* at PageID.564. Petitioner also admitted that he was satisfied with the work and advice of his defense counsel. *Id.* at PageID.563. Moreover, during the course of the Rule 11(f) inquiry, the Court explained at length the consequences of Petitioner accepting the Rule 11 Plea Agreement and the benefits that he would be surrendering by opting out of a trial. *Id.* at PageID.568. Petitioner offers no convincing argument that can overcome the presumed veracity of his own statements made in open court and under oath. *See Blackledge*, 431 U.S. 63, 74. Although Petitioner did face a difficult choice between two unattractive options, either taking his case to trial and risking life in prison or pleading guilty and agreeing to a still-lengthy sentence, ECF No. 42, PageID.546, such a choice raises no inference of involuntariness on the part of the defendant. Petitioner cites to no authority to the contrary. This claim must be dismissed.

## CONCLUSION

For the reasons just stated, this Court concludes that Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence under 18 U.S.C. § 2255 is **DENIED**.

**IT IS SO ORDERED**.

DATED: December 1, 2020

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge